UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

PARISH OF CAMERON                    CASE NO.  2:18-CV-688

VERSUS                               JUDGE ROBERT R. SUMMERHAYS

APACHE CORPORATION                   MAGISTRATE JUDGE KATHLEEN KAY
(OF DELAWARE), et al.,


REASONS FOR DECISION

The present matter before the Court is Shell USA, Inc.'s Motion for Reconsideration

Pursuant to F.R.C.P. 59 [ECF No. 113]. Shell seeks reconsideration of the Court's December 22,

2022, Judgment remanding this case to state court. For the reasons explained below, the Court

DENIES the motion.

I.
BACKGROUND

Several Louisiana parishes filed forty-two lawsuits (the "Cameron Parish Cases" ) against

various oilfield-related defendants (the "Defendants")[1] in state court alleging violations of permits

---

[1] Alpine Exploration Companies, Inc., Anadarko E&P Onshore, LLC, Anderson Exploration Company, Incorporated,
Apache Corporation (Of Delaware), Apache Oil Corporation, Atlantic Richfield Company, Auster Oil and Gas, Inc.,
Badger Oil Corporation, Ballard Exploration Company, Inc., Bay Coquille, Inc., Bepco, L.P., Bopco, L.P., BP
America Production Company, Brammer Engineering, Inc., Burlington Resources Oil & Gas Company, LP, Cedyco
Corporation, Central Resources, Inc., Centurion Exploration Company, Chevron Pipe Line Company, Chevron
U.S.A. Holdings, Inc., Chevron U.S.A., Inc., Condor Petroleum Corporation, ConocoPhillips Company,
Covey Energy, Inc., Crimson Exploration Operating, Inc., Cypress E&P Corporation, Darsey Operating Corporation,
Davis Oil Company, Davis Petroleum Corporation, Denbury Onshore, LLC, Denovo Oil & Gas, Inc., Devon Energy
Production Company, L.P., Diasu Oil & Gas Company, Dominion Oklahoma Texas Exploration & Production, Inc.,
Endeavor Energy Resources, L.P., Energen Resources Corporation, Energy Properties, Inc., Energyquest II, LLC,
Enervest Operating, L.L.C., Estate of William G. Helis, Exchange Oil & Gas Corporation, Exco Resources, Inc.,
Exxon Mobil Corporation, Fieldwood Sd Offshore LLC, Freeport Sulphur Company, Freeport-Mcmoran Oil & Gas
L.L.C., Gas Transportation Corporation, Graham Royalty, Ltd., Great Southern Oil & Gas Company, LP, Gulfport
Energy Corporation, Helis Oil & Gas Company, L.L.C., Henry Production Company, Inc., Hess Corporation, Hilcorp
Energy Company, Hilliard Petroleum Inc., Linder Oil Company, A Partnership, Honeywell International, Inc., HRC
Energy Holdings (La), Inc., Hunt Oil Company, Iberia Operating Corporation, Indian Exploration, Inc., Inexco Oil

issued under the State and Local Coastal Resources Management Act of 1978 ("SLCRMA")[2] and associated regulations, rules, and ordinances ("CZM laws") based on the Defendants' oil exploration and production activities in coastal parishes.[3] SLCRMA provides a cause of action against companies that either violate a state-issued coastal use permit or fail to properly obtain a coastal use permit when required. The act also contains certain exemptions from the coastal use permitting requirements, namely, uses which do not have a significant impact on coastal waters and activities which were "lawfully commenced" prior to the enactment of SLCRMA—the so-called "historical use" or "lawfully commenced" exemption.[4] Plaintiffs assert that Defendants' pre-SLCRMA activities were not lawfully commenced and therefore do not fall within the exemption.

The cases had been previously removed to this Court on the basis of admiralty jurisdiction, federal jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b)(1), and federal question jurisdiction under 28 U.S.C. § 1331. As for OCSLA, the Court

---

Company, Jones Co., Ltd., Kerr-Mcgee Oil And Gas Onshore LP, Kilroy Company Of Texas, Inc., La Mesa Production Inc., Latex-Star, Inc., Leads Resources L.L.C., Linder Oil Company, A Partnership, LLOG Exploration & Production Company, L.L.C., LLOG Exploration Company, L.L.C., Lopco, Inc., Louisiana Energy Production LLC, Lyons Petroleum, Inc., Mar-Low Corporation, Marsh Engineering, Inc., Mccormick Operating Company, Merit Energy Company, LLC, Mobil Oil Exploration & Producing, Mobil Oil Exploration & Producing Southeast Inc., Mosaic Global Holdings, Inc., Northwest Oil Company, Oleum Operating Company, L.C., Omni Operating Co., Oxy USA Inc., Palace Operating Company, Petroquest Energy, L.L.C., Resource Securities Corporation, Resources Investment Corporation, Rogers Oil Co., Sable Minerals, Inc., Samuel Gary Jr. & Associates, Inc., Shell Offshore, Inc., Shell Oil Company, Shocker Energy Of Louisiana, Inc., Shoreline Southeast LLC, SM Energy Company, Southeast Inc., Southport Exploration, Inc., Star Energy, Inc., Swepi LP, SWN Production Company, LLC, Taylor Energy Company, LLC, Texas Pacific Oil Company, Inc., Texas Petroleum Investment Company, The Louisiana Land And Exploration Company, LLC, The Meridian Resource & Exploration LLC, The Texas Company, Toce Energy, L.L.C., Total Petrochemicals & Refining USA, Inc., Transco Exploration Company, Transcontinental Oil Corporation, Union Oil Company of California, Vernon E. Faulconer, Inc., Vintage Petroleum, L.L.C., Wagner Oil Company, Walter Oil & Gas Corporation, WEC Onshore, LLC, White Oak Operating Company, LLC., Whiting Petroleum Corporation, Williams Exploration Company, Xplor Energy Operating Company, XTO Energy Inc., Zadeck Energy Group, Inc., Zenergy, Inc.

[2] This statute is also known as the Coastal Zone Management Act, La. Rev. Stat. § 49:214.21 *et seq.*

[3] *See, e.g., ECF No.* 1, att. 59, pp. 3–26.

[4] La. R.S. § 49:214.34(C)(2); (A)(10).

concluded that the activities involved did not take place on the Outer Continental Shelf. The Court also found that admiralty claims brought at law in state court pursuant to the Saving to Suitors' Clause are not removable in the absence of an independent jurisdictional basis. Finally, the Court held that the Defendants could not establish federal question jurisdiction because the remedies sought were specifically limited to those arising under state law.[5] The Court, therefore, remanded the cases to state court.

Defendants then, for a second time, removed this case along with eleven other cases. The current Notice of Removal, filed on May 23, 2018, asserts federal officer jurisdiction under 28 U.S.C. § 1442(a)(1) and federal question jurisdiction under 28 U.S.C. § 1331.[6] Defendants contend that they first became aware of these removal grounds when they received an expert report in a related case on April 30, 2018, which addressed SLCRMA's "lawfully commenced" exemption.[7] Defendants argue that this expert report revealed for the first time that Plaintiffs' claims primarily attack activities undertaken before SLCRMA's effective date (1980), including activities that were subject to extensive and exclusive federal direction, control, and regulation during World War II.[8]

Plaintiffs filed motions to remand, arguing that (1) Defendants' claim of federal officer jurisdiction is without merit; (2) Defendants' federal question jurisdiction basis for removal has already been rejected; and (3) removal was untimely because the expert report cited as the basis for removal was received months, if not years, after the removing Defendants knew or should have known the factual underpinnings of Plaintiffs' claims. Defendants opposed the motions to remand.[9] On September 26, 2019, the Court granted the two motions to remand, holding that

---

[5] See *Cameron Parish v. Auster Oil & Gas, Inc.*, W.D. La. 2:16-cv-530, ECF No. 89, 101 and 102.
[6] ECF No. 1.
[7] Expert report issued by Plaintiffs in the case of *Parish of Plaquemines v. Rozel Operating Co.* (the "*Rozel* Report").
[8] ECF No. 1.
[9] ECF Nos. 67, 71.

removal was timely but that Defendants had not established grounds to remove under Section 1442(a)(1) nor had they established a basis for federal question jurisdiction.[10] Defendants filed a Notice of Appeal and the Fifth Circuit consolidated the present case with a related action pending in the United States District Court for the Eastern District of Louisiana, *Parish of Plaquemines v. Chevron USA, Inc., et al.*, for purposes of the appeal.[11]

On August 5, 2021, the Fifth Circuit issued an opinion affirming the Court's ruling on the motions to remand in part, reversing the Court's remand orders in part, and remanding both the present case and *Parish of Plaquemines* to the Western District of Louisiana and Eastern District of Louisiana, respectively.[12] The Fifth Circuit ruled that Defendants timely removed the cases from state court.[13] The Fifth Circuit panel also affirmed the rulings of the district courts in both cases that the Defendants had not established grounds for federal question jurisdiction under 28 U.S.C. § 1331. The Circuit, however, remanded the cases to determine federal officer removal jurisdiction in light of the circuit's intervening decision in *Latiolais v. Huntington Ingalls, Inc.*[14] In *Latiolais*, the circuit overruled its prior "causal nexus" requirement for federal officer removal jurisdiction. On remand, the parties filed supplemental briefs addressing the new test set forth by the Circuit in *Latiolais*.

On January 11, 2022, the district court in the Eastern District of Louisiana issued its second ruling on the motion to remand filed in *Parish of Plaquemines v. Chevron*.[15] The district court in *Parish of Plaquemines* applied the Fifth Circuit's new test under *Latiolais* and granted the motions

---

[10] ECF No. 147.
[11] ECF No. 156.
[12] ECF. No. 147.
[13] *Id.* at 8-18.
[14] 951 F.3d 286, 290 (5th Circuit 2020).
[15] No. 18-5217, 2022 WL 101401 (E.D. La. Jan. 11, 2022).

4

to remand filed in that case.[16] The Defendants in that case then, once again, filed a Notice of Appeal to the Fifth Circuit. On October 17, 2022, the Fifth Circuit issued an opinion affirming the Eastern District's remand order in the *Plaquemines Parish* case.[17]

Applying the Fifth Circuit's *Plaquemines Parish* decision to the Cameron Parish Cases, the Court concluded that Defendants had not satisfied the requirements for removal under the federal officer removal statute, and therefore granted the motions to remand filed in each of the Cameron Parish Cases. The defendants in all of the Cameron Parish Cases except the present case filed Notices of Appeal. The defendants in those cases ultimately moved to dismiss their appeals when the Supreme Court denied writs of certiorari filed in the *Plaquemines Parish* case. In the present case, however, Shell requests that the Court reconsider its judgment remanding the present case to state court. Shell argues that its war-time refinery contracts set it apart from the other defendants in the Cameron Parish Cases and that its role as a war-time contractor supports federal officer jurisdiction even under the Fifth Circuit's *Plaquemines Parish* decision.

## II.
### RELEVANT LEGAL STANDARDS

A defendant may remove any action against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, [sued in] an official or individual capacity for any act under color of such office."[18] "[F]ederal officer removal under § 1442 is unlike other removal doctrines: it is not narrow or limited."[19] The Supreme Court requires "a liberal interpretation of § 1442(a) in view of its chief purpose—to

---

[16] *Id.*

[17] *Plaquemines Parish v. Chevron USA, Inc.*, No. 22-30055, 2022 WL 9914869 (5th Cir. Oct. 17, 2022).

[18] 28 U.S.C. § 1442(a).

[19] *Texas v. Kleinert*, 855 F.3d 305, 311 (5th Cir. 2017).

prevent federal officers who simply comply with a federal duty from being punished by a state court for doing so."[20] Section 1442 applies to any "private persons 'who lawfully assist' the federal officer 'in the performance of his official duty.'"[21] Section 1442(a) creates an exception to the "well-pleaded complaint" rule in that "the raising of federal question in the officer's removal petition ... constitutes the federal law under which the action against the federal officer arises for Article III purposes."[22] A defendant may remove a case under section 1442(a) by showing "(1) that it is a person within the meaning of the statute, (2) that it has a colorable federal defense, (3) that it acted pursuant to a federal officer's directions, and (4) that a causal nexus exists between [its] actions under color of federal office and the plaintiff's claims."[23] There is no dispute that Defendants qualify as "persons" under the first requirement. The Court, however, concluded in its original remand ruling that Defendants could not satisfy the "acting under" or "causal nexus" requirement for federal officer removal jurisdiction under section 1442(a)(1). The "causal nexus" requirement was subsequently overruled in favor of the more lenient test in *Latiolais*.

To satisfy § 1442(a)'s "acting under" prong, a defendant must show "an effort to assist, or to help carry out, the duties or tasks of the federal superior."[24] The *Watson* Court distinguished a party's *compliance* with federal regulations from actions "helping the Government to produce an item that it needs."[25]Assistance that "goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks" meets § 1442(a)'s "acting under" requirement.[26] To establish that a person is "acting under" a federal official, a removing party must show a

---

[20] *State of La. v. Sparks*, 978 F.2d 226, 232 (5th Cir. 1992).
[21] *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 151 (2007).
[22] *Mesa v. California*, 489 U.S. 121, 136 (1989).
[23] *Legendre v. Huntington Ingalls, Inc.*, 885 F.3d 398, 400 (5th Cir. 2018).
[24] *Watson*, 551 U.S. at 152.
[25] *Id*. at 153.
[26] *Id*.

"substantial degree of direct and detailed federal control over the defendant's work...."[27] This relationship between the defendant and the federal office or official must involve "subjection, guidance, or control."[28] It is not sufficient to merely show that "the relevant acts occurred under the general auspices of a federal office or officer."[29]

The cases applying this "acting under" requirement provide useful guidance as to how to draw the line between "direct control" and mere regulation.  Many cases where courts have found sufficient control and direction to satisfy the "acting under" requirement involve government contractors who manufacture products according to detailed specifications and oversight by an agency or officer of the federal government.[30]  For example, in *Winters,* the plaintiff sued for personal injuries received as a result of exposure to Agent Orange while working as a civilian nurse for the United States Agency for International Development in Vietnam.[31]  Diamond Shamrock was a government contractor that supplied the mix of herbicides known as Agent Orange to the United States Defense Department.[32]  The Fifth Circuit affirmed the district court's conclusion that Diamond Shamrock was "acting under" a federal officer or office in supplying this mix of herbicides.  The court observed that the Defense Department mandated a specific mixture of herbicides making up Agent Orange and that "the defendants were compelled to deliver Agent

---

[27] *In re "Agent Orange" Prod. Liab. Litig.*, 304 F. Supp. 2d 442, 447 (E.D. N.Y. 2004).
[28] *Zeringue v. Crane Co.*, 846, F.3d 785, 793 (5th Cir. 2017) (citing *Watson v. Philip Morris, Co.*, 551 U.S. 142 (2007)). *Latiolais* overruled *Zeringue* with respect to the causal nexus test. 951 F.3d at 292. With respect to the other elements of federal officer removal jurisdiction, *Zeringue* is still good law.
[29] *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 947 (E.D. N.Y. 1992)
[30] *See, e.g., Zeringue,* 846 F.3d at 795 (government directives to use asbestos); *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 460, 465 (5th Cir. 2016) (government requirement that contractor use asbestos in the thermal installation of Navy ships); *In re Asbestos Products Liab. Litig. (No. VI.)*, 770 F. Supp. 2d 736 (E.D. Pa. 2011) ("acting under" requirement satisfied where government contractor established that the government had approved reasonably precise specifications that called for the use of asbestos and that the contractor's products conformed to those specifications); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 399 (5th Cir. 1998) (government contracted with the defendants for a specific mixture of herbicides known as Agent Orange); *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129 (D. Mass. 2009) (contractor complied with precise design specifications).
[31] 149 F.3d at 390.
[32] *Id.*

Orange to the government under threat of criminal sanctions."[33]  The court concluded that the federal government exercised direct control over the composition and production of Agent Orange.[34]  In other words, the plaintiff's injuries resulted from an aspect of the product that was mandated and controlled by the federal government under the terms of a contract with Diamond Shamrock.[35]

Similarly, in *Zeringue*, the plaintiff sued multiple defendants for damages caused by asbestos exposure.[36]  The plaintiff alleged exposure while deployed with the U.S. Navy as well as exposure when he worked in the Avondale Shipyard near Navy vessels that contained asbestos.[37]  The court found that the defendants had "acted under" a federal officer or office with respect to these asbestos exposure claims because the Navy had mandated the use of asbestos insulation in its contract specifications and the defendants complied with those requirements.[38]  According to the court, "equipment could not have been installed aboard Navy vessels unless it was first determined by the Navy to be in conformity with all applicable Navy specifications."[39]  The court further noted that had the defendant not complied with the specifications and provided these products to the government, "the Navy would have had to build those parts instead."[40]  In all of these cases, the plaintiffs' claims arose out of conduct *mandated* by the government.

On the other hand, two cases where the courts concluded that the "acting under" requirement was not satisfied illustrate the limits of federal officer removal: *Watson*,[41] and *In re*

---

[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] 846 F.3d 785.
[37] *Id.* at 788.
[38] *Id.*
[39] *Id.* at 792.
[40] *Id.*
[41] 551 U.S. 142.

*Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*[42] In *Watson,* the plaintiffs alleged that Phillip Morris manipulated the design of its "light" cigarettes so that they tested for lower levels of tar and nicotine.[43] The industry's testing process for measuring tar and nicotine was operated under the regulatory supervision of the Federal Trade Commission (FTC). The Supreme Court concluded that Phillip Morris was not "acting under" the FTC even though the testing process for tar and nicotine was heavily regulated.[44] The Court noted that a private party's compliance with federal law or acquiescence to a federal agency's order does not satisfy the "acting under" requirement of the federal officer removal statute, "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored."[45] In other words, differences in the degree of regulatory oversight alone cannot bring a regulated party within the contours of section 1442(a):

> As we have pointed out, however, differences in the degree of regulatory detail or supervision cannot by themselves transform Philip Morris' regulatory compliance into the kind of assistance that might bring the FTC within the scope of the statutory phrase "acting under" a federal "officer." And, though we find considerable regulatory detail and supervision, we can find nothing that warrants treating the FTC/Philip Morris relationship as distinct from the usual regulator/regulated relationship. This relationship, as we have explained, cannot be construed as bringing Philip Morris within the terms of the statute.[46]

The Court also distinguished the "government contractor" line of cases, such as the Agent Orange and asbestos cases, by reasoning that the defendants in those cases were assisting the federal government by producing an item that the government required pursuant to a contract.[47] No such contractual relationship existed in the *Watson* case.

---

[42] 488 F.3d 112 (2d Cir. 2007).
[43] 551 U.S. 142.
[44] *Id.,* at 157.
[45] *Id.,* at 143.
[46] *Id.*
[47] *Id.*

In *MTBE Prod. Liab. Litig.*, the plaintiffs brought claims against private companies that "manufactured, refined, marketed, or distributed gasoline containing MTBE" on the grounds that this additive contaminated water supplies.[48] The defendants attempted to remove the case under the federal officer removal statute on the grounds that the federal Clean Air Act and regulations promulgated by the Environmental Protection Agency (EPA) required them to reformulate their gas with additives such as MTBE to "oxygenate" the gas and therefore reduce emissions in certain metropolitan areas.[49] The district court concluded that the defendants had satisfied the "acting under" requirement for removal on the grounds that the defendants used MTBE because EPA regulations required them to oxygenate their product for certain metropolitan areas.[50] Even though other additives had been approved to oxygenate gasoline, the district court noted that "both Congress and the EPA were aware that the defendants would have to use MTBE in order to comply with the Clean Air Act's requirements."[51] The district court further noted that MTBE was the only approved additive available in a quantity sufficient to comply with the EPA's regulations.[52] The Second Circuit reversed. According to the court, there was no evidence of "an explicit directive in either the Clean Air Act or its implementing regulations" that required the use of MTBE.[53] In other words, while the statute and implementing regulations required defendants to oxygenate their gas, the regulations did not *mandate* that this be done by the addition of a specific additive, namely MTBE.[54] Nor did the court find evidence that these regulations were implemented with the

---

[48] 488 F.3d at 114.
[49] *Id.*
[50] *Id.*
[51] *Id.* at 126.
[52] *Id.*
[53] *Id.*
[54] *Id.*

knowledge that the use of MTBE was the only way that the defendants could comply with the directives of the EPA's regulations.[55]

In the *Plaquemines Parish* case, the Fifth Circuit applied the "acting under" requirement for federal officer removal in a case involving the same alleged grounds for removal.[56] As in the present case, the defendants in *Plaquemines Parish* argued that the federal government's regulation of oil and gas production during World War II satisfied the "acting under" requirement for federal officer removal jurisdiction.[57] The defendants in *Plaquemines Parish* argued that oil and gas producers acted as "subcontractors" to refineries during World War II, that these refineries were government contractors heavily regulated by the federal government during World War II, and that this subcontractor relationship satisfies *Latiolais*' requirement that the conduct at issue be "connected or associated" with the directives of a federal officer.[58] With respect to federal government regulation of oil and gas producers, the Fifth Circuit held that the evidence in the record showed nothing more than the fact that the producers were subject to government regulation.[59] According to the circuit, the removing party's actions "must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior."[60] The Fifth Circuit concluded that merely complying with federal regulation or cooperating with federal agencies—as the evidence shows in the present case—does not amount to carrying out "the duties or tasks of the federal superior," and thus does not support removal under section 1442(a)(1).[61]

---

[55] *Id.*

[56] *Plaquemines Parish, et al v. Chevron USA, Inc., et al,* 2022 WL 9914869 (5th Cir. 2022)

[57] *Id.*

[58] *Id.* at *2-3.

[59] *Id.* at 3.

[60] *Id. (quoting Watson,* 551 U.S. at 151-52) (emphasis in original).

[61] *Id.*

With respect to the defendants' subcontractor arguments, the Fifth Circuit held that there was no evidence in the record of any contract creating a subcontractor relationship with the defendant producers.[62] According to the Fifth Circuit, mere "supplier relationships" are insufficient to create a subcontractor relationship.[63] The circuit further reasoned that, even if a subcontract existed, the presence of a subcontractor relationship is not sufficient to support federal officer removal jurisdiction unless the subcontractor can independently show how they, as opposed to the prime contractor, were "subject to the federal government's guidance and control."[64] The Circuit reiterated that the evidence in the record did not establish the level of control or guidance to support federal officer removal with respect to the defendant producers. Accordingly, the Fifth Circuit affirmed the Eastern District's order remanding that case to state court.

Finally, prior to the Fifth Circuit's recent decision in *Latiolais*, a party removing a case under Section 1442(a)(1) had to establish "that the defendants acted pursuant to a federal officer's directions and that *causal nexus* exists between the defendants' actions under color of federal office and the plaintiff's claims."[65] The *Latiolais* court noted, however, that section 1442(a) was subsequently amended, "altering the requirement that a removable case be 'for' any act under color of federal office and permitting removability of a case 'for *or relating to*' such acts."[66] The Fifth Circuit ultimately concluded in *Latiolais* that the so-called "causal nexus" requirement adopted in *Winters*—and followed in *Bartel v. Alcoa Steamship Co., Inc.*[67] and its progeny even after the amendment of Section 1442(a)—was no longer viable. According to the court, a removing party

---

[62] *Id.*
[63] *Id.*
[64] *Id.* at *4.
[65] *Winters*, 149 F.3d at 398 (emphasis added).
[66] *Latiolais*, 951 F.3d at 291 (emphasis added).
[67] 805 F.3d 169 (5th Cir. 2015).

need only establish that "the charged conduct is connected or associated with an act pursuant to a federal officer's directions."[68]

### III.
### ANALYSIS

Shell argues that its unique role as a war-time contractor for the federal government requires a different result under the federal officer removal statute. In rulings granting the motions to remand, the Court concluded that Defendants had not demonstrated the "subjection, guidance, or control" required to show that they were acting under a federal office or officer.[69] Moreover, as in the *Plaquemines Parish* case, the record did not reflect the government contractor relationship that existed in cases where courts have found that the defendants satisfied the requirements of the federal officer removal statue, such as in *Winters*[70] and *Zeringue*.[71] With respect to *Latiolais*, the Court concluded that the record did not reflect any connection or association between Defendants and any acts taken under the direction of a federal officer.[72] The court concluded that, with respect to oil and gas production activities, the record reflects, at most, that the Defendants complied with federal regulations.[73] Compliance with federal regulations, standing alone, does not support federal officer removal jurisdiction.[74]

The Motion for Reconsideration argues that the Court's reasoning and conclusion does not apply to Shell given its role as a government contractor during World War II. Specifically, Shell argues that it "was both a producer *and refiner* of oil produced for the government under its

---

[68] *Latiolais*, 951 F.3d at 296.
[69] *Parish of Cameron*, 18-cv-677, 2022 WL 17852581 at *7.
[70] 149 F.3d at 390.
[71] 846 F.3d at 788.
[72] *Parish of Cameron*, 2022 WL 17852581 at *9.
[73] *Id.*
[74] *Watson*, 551 U.S. at 151.

direction and control during [World War II]."[75] In this regard, Shell points to dicta from the Fifth

Circuit's *Plaquemines Parish* case observing that "refineries who had federal contracts and acted

pursuant to those contracts can likely remove under Section 1442."[76] Shell characterizes its

contractor relationship during World War II as follows:

> Under its contract with DSC, Shell agreed to produce 9,000 barrels per day of 100-octane avgas for the federal government. The Shell-DSC contract was amended in July 1944 to increase Shell's avgas production from 9,000 to 12,000 barrels per day. The contract required Shell to produce avgas using detailed, government-set specifications. Shell's contract gave the federal government the right "to purchase all or any part of the aviation gasoline" that Shell produced at its Houston and Norco refineries. The contract also included an option for the federal government to take the alkylates and cumene directly from the Norco refinery before they were blended into avgas at the Houston refinery. Under its DSC contract, Shell refined huge quantities of crude oil into avgas and other critical war products for the federal government: Shell's Houston refinery blended more than 1.5 million barrels of 100-octane avgas, and Shell's Norco refinery was "plunged almost completely into war production" with "perhaps its greatest contributions . . . in the field of 100-octane aviation gasoline components." And, Shell obtained substantial quantities of crude for this production from its own field in Black Bayou and transported that crude to its Houston and Norco refineries.[77]

Shell argues that its oil and gas production activities are directly connected to (or associated with)

the requirements of its government refining contracts, and that it was "acting under" a federal

officer or federal office in fulfilling those war-time contracts.

Two decisions out of the Eastern District of Louisiana have addressed the precise question

raised by Shell. In *Parish of Jefferson v. Destin Operating Company, Inc.*,[78] the defendants

similarly argued that they refined petroleum products, such as "avgas," pursuant to a war-time

contract with the federal government. Further, as in the present case, they argued that their

exploration and production activities were dictated by the requirements of these contracts. Judge

---

[75] ECF No. 113 at 3 (emphasis added).
[76] *Plaquemines Parish*, No. 22-30055, 2022 WL 9914869 at *4.
[77] ECF No. 113 at 8 (footnotes omitted).
[78] 18-cv-5206, 2023 WL 2772023 (E.D. La. April 4, 2023).

Fallon ultimately concluded that the defendants had not satisfied *Latiolais'* "connected or associated" test.[79] According to the court, any control asserted by the federal government with respect to the refinery contracts was too far removed and attenuated from the exploration and production activities that were the subject of the plaintiffs' claims.[80] The court noted that "there is no evidence that the federal government asserted any control over those refiner's oil production activities."[81] Accordingly, the court denied the defendants' motion to reconsider the remand order.[82]

In *Parish of Plaquemines v. Northcoast Oil Co.*,[83] the court addressed the same argument that the defendant was not only a producer but also a refiner operating under war-time contracts with the federal government. As in *Parish of Jefferson*, Judge Zainey rejected this argument on the grounds that the existence of a refining contract did not mean that the defendant "acted under" a federal officer with respect to the exploration and production activities challenged in the plaintiffs' lawsuit.[84] According to the court:

> This case lacks any connection between crude oil production activities and the directives of a federal officer as dictated by the federal contract. The removing defendants have attempted to elide past that problem by defining the federal directive as broadly as possible, *i.e.*, produce military petroleum products at the refinery in Port Arthur, Texas and then creating a factual connection between oil production in Louisiana to federal activity at the refinery. But every case that the court has reviewed, including the post-*Latiolais* decisions, that grounds federal officer removal on relatedness to a federal contract, examines the directives of that contract when determining whether all of the requirements for a federal officer removal are met, and in particular whether the plaintiffs' claims relate to the directives of a federal officer.[85]

---

[79] *Id.* at *4.
[80] *Id.*
[81] *Id.* at *3.
[82] Judge Fallon entered a similar order in *Parish of Jefferson v. Equitable Petroleum Corporation*, 18-cv-5242, 2023 WL 2771705 (E.D. La. Apr. 4, 2023).
[83] No. 18-5228, 2023 WL 2986371 (E.D. La. Apr. 18, 2023).
[84] *Id.* at *8-10.
[85] *Id.* at *9.

The court concluded that the refining contract cited by the defendants did not expressly address the exploration and production activities at issue in that case.[86] Accordingly, Judge Zainey concluded that the defendants had not satisfied the requirements for federal officer removal jurisdiction and granted the motion to remand.[87]

Here, the Court agrees with the reasoning of the courts in *Plaquemines Parish* and *Parish of Jefferson*. As the Court noted in its ruling in the Cameron Parish Cases granting the motions to remand, the Defendants do not distinguish between exploration and production, on the one hand, and the process of refining petroleum products into avgas and other refined products required under their war-time refinery contracts, on the other hand. The conduct targeted in the Cameron Parish Cases is the Defendant's exploration and production activities in the field:

- How Defendants spaced wells;

- Defendants' use of dredged canals instead of roads;

- Defendants' use of vertically drilled wells;

- Defendant's use of earthen pits and centralized tank batteries;

- Defendants' practices involving water discharged from drilling sites and the failure to re-inject saltwater; and

- Defendants' use of inadequate tubing.

In contrast, Shells' refinery contracts pertain to the production of refined petroleum products. The evidence in the record does not support a link between the requirements of Shell's refining contracts and the conduct challenged in Plaintiffs' SLCRMA claims. This distinction removes the present case from the government contractor line of cases relied on by Shell. For example, in

---

[86] *Id.*
[87] *Id.*

*Zeringue*, the plaintiff's claims were grounded on conduct arising out of the defendant's compliance with the specifications of a government contract—namely, the requirement that asbestos insulation be used in the defendant's products.[88] The record here reflects no such connection. In sum, even considering the evidence that Shell acted under government refining contracts with respect to manufacturing refined petroleum products, it has not shown that, with respect to the production of oil and gas in the field, it "acted under" a federal officer. Nor has Shell satisfied the "connected or associated" test of *Latiolais*.[89] The Court agrees with Judge Fallon's assessment in *Parish of Jefferson* that the connection between a refining contract and the production activities in the field is too attenuated to support federal officer removal jurisdiction based on the evidence in the record.[90] Accordingly, the Court DENIES the Motion for Reconsideration.

## III.
### CONCLUSION

For the foregoing reasons, the Court DENIES Shell's Motion for Reconsideration [ECF No. 113]. The Court, however, will stay its Judgment remanding this case for a period of thirty (30) days to allow Shell to file a Notice of Appeal if it decides to do so.

THUS DONE in Chambers on this 13th day of June, 2023.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[88] *Zeringue, 846 F.3d at 795.*
[89] *Latiolais,* 951 F.3d at 291
[90] 2023 WL 2772023 at *4.

17